NEW–YORK PRACTICE REPORTS. 177

The People ex rel. Supers of Poor of· Monroe agt. Comr's of  Emigration.

## SUPREME COURT.

The People *ex rel.* THE COUNTY SUPERINTENDENTS OF THE POOR OF MONROE COUNTY agt. THE COMMISSIONERS OF EMIGRATION.

Under the "act concerning passengers in vessels, coming to the city of New-York," passed May 5, 1847, the commissioners of emigration are equally liable for "*temporary relief*," as for permanent support, furnished by towns, cities and counties to pauper emigrants under that act, although *not rendered in the county poor house.*

Temporary relief to a pauper, is a duty enjoined by our poor laws upon overseers and superintendents of the poor, equally with permanent maintenance and support. Indeed, they should be regarded in reference to the provisions of the act above referred to, as convertible terms.

The remedy of superintendents of the poor of a county, to compel the commissioners of emigration to credit and allow their proper accounts, and provide for their payment, is by *mandamus.*

*Ontario Special Term, April,* 1857.

At a special term held before Mr. Justice SMITH, in Monroe county, on the second day of February, 1857, an order was made that the defendants show cause on, &c., why a mandamus should not issue to compel the defendants to allow and pass to the credit of the relators, and provide for the payment of the same out of any moneys in the hands of the defendants applicable thereto, the account of the relators for relief to certain persons therein, as presented to said defendants for the month of December, 1856, and as with said order also particularly to be shown.

The order was granted upon an affidavit made by one of the relators, showing among other things, that during the month of December, 1856, the relators furnished to the persons whose names are included in a list or schedule marked " A," annexed to the affidavit, the several sums set opposite the name or each. That such sums were paid to or for such persons as poor persons in said county of Monroe, and who were in each and every case in poor and destitute circumstances, requiring temporary relief, and temporary relief only, and such as could and should more properly be provided to such persons at their

respective places of residence, than at the Monroe county poor-house. That said several persons having no settlement in any city or town of said county, and aside from the aid to which they would be entitled from the emigrant or commutation fund, or which said county would be entitled to receive for or on account of such persons, the said persons would be chargeable solely on the said county of Monroe, so far as they should require public aid.

That said several persons named in said schedule, have, within the last five years, arrived at the port of New-York as emigrants, and who have paid, or on whose account the commutation money provided and required by the statute, has been paid, and on whose account the bond in said statute required has been given; and that said several persons still remain a charge on the commissioners of emigration, and on the fund raised and to be raised by such commutations as the books of said commissioners show, and as they, the said commissioners, admit.

That after the expiration of the said month of December, 1856, the relators made out an account of the moneys so actually paid, with the date and amount, and for what purpose paid, and sent the same forward to the defendants, duly verified for their consideration and allowance; and that the defendants might place the same or the amount thereof to the credit of said county on the books of the defendants, and with a request that they would provide for the payment thereof out of the commutation money, and out of any money that may have been or may be raised or collected on said bonds, as the defendants were in duty bound to do.

That said several poor persons were aided and provided for by the relators as other poor persons charged on said county were aided, and not otherwise; and that the relators inquired into each case separately on the oath of the applicant for relief, and granted the same only in the cases provided by law, and in each case sent forward said proof to the defendants.

That the defendants rejected said account and refused to allow the same in the whole and every part thereof, for no

other reason than that said amount was for temporary relief, and that the defendants had resolved to pay no charges for temporary relief, or of a like kind, except the same were rendered in the county poor-house; that the defendants have never provided any place or way to take care of said poor persons, and have paid no part or portion of the expense of such place within the said county or elsewhere for their aid, support or maintenance.

The schedule annexed, referred to in the affidavit, contains a list of seventy-two names, with an amount set opposite to each, amounting, in the aggregate, to rising of $200.

The defendants now appear, and by way of showing cause, &c., set forth in a verified return or answer, to the above order and affidavit, that the amounts of money received by them as and for commutation money of bonds mentioned in chapter 195 of the Laws of 1847, and the various laws in addition thereto, or amendatory thereof, or from bonds given under said chapter or laws, have all been expended by them, the defendants, in indemnifying the various cities, towns and counties of the state, under and pursuant to said chapter and laws, and in maintaining and supporting the persons or passengers mentioned and described in said chapter and laws.

That they have not now any money or funds in their possession, or under their control, for any purpose whatever, except such as they obtain by way of loan, but that they are overdrawn at the bank in which are deposited all the moneys paid, belonging or coming to them, and that they have been thus without funds, and overdrawn, for more than three months, and that they now have pending before the legislature an application to enable them to meet and pay the expenses and charges which the various cities, towns and counties of this state have incurred for the support and maintenance of emigrant passengers, who have arrived at the port of New-York, and which expenses the defendants, had they been in funds, were required to pay under the provisions of said chapter and laws, which expenses and charges exceed one hundred thousand dollars.

That the claims made by the relators in their papers in said matter, were respectively for temporary relief only, and as the defendants are advised, they are prohibited by law from paying or appropriating any of such money to the payment of claims of that nature, or any of them, and without further inquiry in regard thereto, refused to admit them in the account between the relators and the defendants, and rejected them.

That they, the defendants, never gave any orders or directions or authority for the persons mentioned in the said schedule, to be sent forward to them, the said defendants; and that they, the defendants, have prescribed rules and regulations, under and pursuant to and for the purposes mentioned in section five of said chapter.

This answer is dated and sworn to April 2d, 1857.

The relators now move that a peremptory mandamus issue, commanding the defendants to allow and pass the said account as stated in the order to show cause.

W. C. ROWLEY, *for the relators.*
J. C. DEVELIN, *for the defendants.*

WELLES, Justice. The counsel for the defendants, contends that the relators' remedy, if they are entitled to any, is not by mandamus. It seems to me, however, that if the relators are right upon the main question upon the merits, they are entitled to the remedy they ask for. The 4th section of the act entitled, " An act concerning passengers in vessels coming to the city of New-York," passed May 5th, 1847, (*Sess. L. of* 1847, *p.* 182,) declares it to be the duty of the commissioners of emigration to provide for the maintenance and support of such of the persons for whom commutation money shall have been paid, or on whose account bonds shall have been taken as in said act is provided, as would otherwise become a charge upon any city, town or county of this state, and requires the commissioners to appropriate the moneys for that purpose, in such manner as to indemnify, as

far as may be, the said cities, towns and counties for any expense or charge which may be incurred for the maintenance and support of the persons aforesaid, in proportion to the expenses incurred by such cities, towns and counties severally, for such maintenance and support.

When the present claim of the relators was presented to the defendants, it was rejected as not being provided for by the act in question, for the reason that the expenses incurred were for temporary relief only, and that the relief afforded to the emigrants named in the papers, was not rendered in the county poor-house; no other objection was made to the allowance of the claim. The affidavit on the part of the relators, which is in no respects controverted, seems to present a clear case for the allowance of their claim to be reimbursed for the moneys paid for the emigrants, or at least, to entitle them to have the same recognized by the defendants, and by them placed to the credit of the relators on the books of the former, so as to be in a condition to receive the money therefor, or some part thereof, when, and as fast as there should be funds in the hands of the defendants or under their control, applicable to that purpose, unless the particular objection, made by the defendants, be sound and tenable. If the defendants are wrong in their legal views of the relators' rights in this respect, they are shown to be in the neglect of a plain legal duty; are omitting, to the injury of the relators, the performance of an act which the law enjoins upon them.

If an action would lie, which I do not believe, it would afford but a doubtful and inadequate remedy. Nor am I able to perceive that a common law *certiorari* would be of any service to the relators.

It becomes necessary, therefore, to consider, whether the act referred to, contemplates or embraces repayment to the relators, of moneys paid to or for pauper emigrants for temporary relief. The language employed by the statute is "maintenance and support." But the act nowhere indicates in what manner the maintenance and support are to be rendered.

Temporary relief to a pauper is a duty enjoined by our

poor laws upon overseers and superintendents of the poor, equally with permanent maintenance and support. They are either of them a public burden, and temporary relief is a species of support. Indeed, it seems to me they should be regarded, in reference to the provisions of the act referred to, as convertible terms. No reason is perceived why any distinction should be made between them. Upon the whole, I incline to the opinion that the temporary relief, provided by the relators to the emigrants in this case, is within the scope and object of the act, and that the defendants ought to have entertained the application to have the same placed to the credit of the relators upon their account books, and to provide for its payment out of any money in their hands, or under their control, applicable to such payment. A peremptory mandamus should therefore issue, substantially as stated in the order to show cause.